UNITED STATES of America, Plaintiff,

v.

Isael RAMIREZ–HERNANDEZ, Defendant.

United States of America, Plaintiff,

v.

Jose Millan–Vasquez, Defendant.

United States of America, Plaintiff,

v.

Hipolito Roque–Castro, Defendant.

Nos. CR12–4111–DEO, CR12–4102–DEO, CR12–3053–MWB.

United States District Court,
N.D. Iowa,
Western and Central Divisions.

Dec. 19, 2012.

**1156**

Kevin C. Fletcher, U.S. Attorney's Office, Sioux City, IA, for Plaintiff.

Max Samuel Wolson, Federal Public Defenders Office, Sioux City, IA, for Defendant.

## ORDER ON DETENTION

LEONARD T. STRAND, United States Magistrate Judge.

These cases are before me on motions by the plaintiff (the Government) for pretrial detention of defendants Isael Ramirez–Hernandez (case number CR12–4111–DEO), Jose Millan–Vasquez (case number CR12–4102–DEO), and Hipolito Roque–Castro (case number CR12–3053–MWB). Because the issues presented are similar, and with the consent of the parties, I held a consolidated hearing on December 13, 2012. Assistant United States Attorney Kevin Fletcher appeared for the Government. All three defendants appeared in person and with their attorney, Assistant Federal Public Defender Max Wolson. The Government offered the testimony of Robert Green, a deportation officer with Immigration and Customs Enforcement (ICE). The defendants did not offer the testimony of any witnesses.

Each defendant is a citizen of Mexico who is charged with illegal reentry and is subject to an ICE detainer.[1] Defendant Ramirez–Hernandez is charged under 8 U.S.C. § 1326(a) for being found knowingly and unlawfully in the United States after having been previously removed from the United States to Mexico on February 26, 2010. Defendant Millan–Vasquez is charged under 8 U.S.C. § 1326(a) and (b)(2) for being an aggravated felon found knowingly and unlawfully in the United States after having been previously removed from the United States to Mexico on October 19, 2009. Defendant Roque–Castro is also charged under 8 U.S.C. § 1326(a) and (b)(2) after having been previously removed on March 19, 2007, subsequent to a felony conviction of illegal reentry as a felon.

In deciding whether to grant the Government's motion for detention, I must determine whether any condition or combination of conditions will reasonably assure the defendants' appearance as required, as well as the safety of any other person and

---

1. An ICE detainer "serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody...." *See* 8 C.F.R. § 287.7.

the community. 18 U.S.C. § 3142(e). A defendant may be detained on the basis of a showing of either dangerousness or risk of nonappearance; it is not necessary to show both. *United States v. Apker*, 964 F.2d 742, 743 (8th Cir.1992) (per curiam); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir.1986) (per curiam). Here, the Government does not argue dangerousness but does argue that there is a substantial risk of nonappearance if the defendants are released. The charge of illegal reentry carries no presumption of detention. 18 U.S.C. § 3142(e). The Government bears the burden of proving by a preponderance of the evidence that there is no condition or combination of conditions that would "reasonably assure" the defendant's appearance at trial. *United States v. Orta*, 760 F.2d 887, 890–91, n. 20 (8th Cir.1985).

█ The Government argues that the defendants must be detained pending trial because of the ICE detainers that will lead to automatic removal from the United States if they are released on bond. It argues that such removal means there is no condition or combination of conditions that will reasonably assure their appearance at trial, as required. Defendants argue that the Government cannot demonstrate a serious risk that they will flee because even if I release them in these cases, they will remain subject to mandatory detention through ICE. They point out that ICE detainers do not create a *per se* rule of mandatory detention under the Bail Reform Act (Act). They argue that I should analyze the factors listed in 18 U.S.C. § 3142(g), as I would in any other type of case, and that "failure to appear" is limited to the risk that a defendant may choose to flee by his own volition and actions. Thus, they contend the risk that they will be forcibly removed to Mexico by ICE before their trials is not a risk of "flight" within the meaning of the Act. Defendants cite *United States v. Jocol–*

*Alfaro*, 840 F.Supp.2d 1116 (N.D.Iowa 2011) in support of this argument.

In *Jocol–Alfaro*, the Honorable Paul A. Zoss referenced one of his previous decisions, *United States v. Villanueva–Martinez*, 707 F.Supp.2d 855, 857 (N.D.Iowa 2010). In that case, the defendant was charged with making false claims of United States citizenship and using a false Social Security number. *Villanueva–Martinez*, 707 F.Supp.2d at 856. There was no charge of illegal reentry. Judge Zoss reasoned that it was improper for the court to speculate on the "risk" of an order of removal by immigration, which the court had no control over. *Id.* at 857 (citing *United States v. Montoya–Vasquez*, No. 4:08CR3174, 2009 WL 103596, at *4 (D.Neb. Jan. 13, 2009)). He stated, "If the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions." *Id.* Ultimately, Judge Zoss found the Government failed to prove by a preponderance of the evidence that no conditions of release would reasonably assure the defendant's appearance as required and released the defendant on bond. *Id.* at 858.

In *Jocol–Alfaro*, defendant Jocol–Alfaro was charged with illegal reentry as well as making false claims of United States citizenship, using false Social Security numbers, and fraudulently using state-issued identification cards to obtain employment in the United States. *Jocol–Alfaro*, 840 F.Supp.2d at 1117. It is not clear from his order whether the Government presented evidence of reinstatement of a previous removal order. Judge Zoss conducted a similar analysis to *Villanueva–Martinez* and after assessing the factors of the Act, released the defendant on bond. I find

that the cases before me are distinguishable from *Jocol–Alfaro* and *Villanueva–Martinez* based on the charges at issue and Green's testimony regarding the *certainty* of removal if any of these defendants are released to ICE custody pursuant to the detainers.

Green testified that Ramirez–Hernandez was previously ordered to be removed from the United States on October 26, 2009. On January 29, 2010, his order of removal was reinstated after he was found in the United States again, and he was subsequently removed on February 26, 2010. As for his criminal history, Ramirez–Hernandez was convicted in the United States District Court for the Southern District of Texas for illegal entry under 8 U.S.C. § 1325(a)(1) on February 2, 2010. On November 16, 2012, he was convicted in the Iowa District Court for Woodbury County for operating while intoxicated. He has an active warrant out of Nobles County, Minnesota, for various charges. Green testified that if I release Ramirez–Hernandez on bond in this case, he would be turned over to Nobles County officials to address the charges there. Once those charges are resolved, he would be returned to ICE custody and removed to Mexico within three to four weeks.

Green testified that Millan–Vasquez was previously ordered to be removed from the United States on October 19, 2009. If I release him on bond in this case, he would be detained by ICE and then removed from the United States to Mexico within three to four weeks.

Finally, Green testified that Roque–Castro was previously removed on April 27, 2001, January 29, 2002, and March 19, 2007. He has a previous conviction of illegal reentry from 2006. Green testified that if he were to be released, he would be detained by ICE, and would subsequently be removed to Mexico within three to four weeks.

I find that the Government has met its burden of proving by a preponderance of the evidence that there is no condition or combination of conditions that would "reasonably assure" the defendants' appearance at trial. All three defendants have previously been removed from the United States and are now charged with illegal reentry. Green testified that if they are released, they will go into ICE custody pursuant to the ICE detainer and will then be removed to Mexico pursuant to the reinstatement of previous removal orders. There is no conflicting evidence in the record. Moreover, this result is consistent with the statute regarding previously removed aliens.

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). *See also* 8 C.F.R. § 241.8 ("An alien who illegally reenters the United States after having been removed … shall be removed from the United States by reinstating the prior order. The alien has no right to a hearing before an immigration judge in such circumstances."). Under these circumstances, removal is not uncertain and speculative, as it was in *Jocol–Alfaro* and *Villanueva–Martinez*. Instead, the Government has shown that removal is certain. And, of course, removal to Mexico would make it extremely unlikely that any defendant would appear here for his trial.

Several courts have found the certainty of removal to weigh heavily in the analysis

of whether there are conditions that could reasonably assure the appearance of the defendant as required. In *United States v. Lozano,* the defendant was charged with illegal reentry in violation 8 U.S.C. §§ 1326(a) and (b)(2) after a previous removal for an aggravated felony conviction. The magistrate judge noted that the defendant presented "the relatively unusual case of a defendant for whom detention and removal by the immigration authorities prior to the conclusion of prosecution appear[ed] to be a certainty" and ordered detention. *United States v. Lozano,* CR No. 1:09cr158–WKW, 2009 WL 3052279, at *6 (M.D.Ala. Sept. 21, 2009). The order of detention was affirmed on supplemental grounds by the district judge. *See United States v. Lozano,* No. 1:09–CR–158–WKW [WO], 2009 WL 3834081 (M.D.Ala. Nov. 16, 2009) (finding that the only congruous result between the language and policies of the Bail Reform Act and Immigration and Nationality Act is one that allows the United States Attorney to prosecute the defendant, and upon his release, to allow ICE to take him into custody for the purpose of removal).

The certainty of removal was also mentioned as a heavily-weighted factor in favor of detention in *United States v. Lucas.* In that case, the defendant was released on bond partly because the court refused to speculate on whether an immigration judge would order removal. The defendant had not been the subject of previous removal proceedings and there was no outstanding order of removal. The judge noted, "This situation differs markedly from one in which a defendant has already been the subject of a removal order. An outstanding order of removal would be strong evidence of likely nonappearance." *United States v. Lucas,* No. 4:08CR3139, 2008 WL 5392121, at *3 (D.Neb. Dec. 19, 2008). Similarly in *United States v. Castro–Inzunza,* the court stated that it was not the ICE detainer that informed the decision

for detention, but the valid, enforceable removal order. *United States v. Castro–Inzunza,* No. 3:11–cr–00418–MA, 2012 WL 1952652, at *7 (D.Or. May 30, 2012). The judge noted that if the removal had not been final, he may have reached a different conclusion. *Id.* Because each of the defendants here has a prior removal order that would be reinstated to remove defendants if placed in ICE custody, the Government has shown that it is a near certainty defendants will not appear at trial if released on bond.

Defendants encourage me to interpret nonappearance under the Act as only a defendant's intentional decision to flee. They argue I cannot order detention based on risk of flight because they would be held involuntarily pursuant to the ICE detainer. However, the express language of the statute mandates detention if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). Nothing about this language suggests that I can consider only the risk of intentional flight when assessing the "appearance" factor.

Under subsection (f), which addresses the need to hold a detention hearing, the statute does state that the judicial officer shall hold a hearing in a case that involves "(A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." However, courts disagree on the effect of this section in the detention analysis. In *Lozano,* the court stated,

Because the Government's detention motion raises the issue of flight, the court finds that the case *involves* this

issue, and that a detention hearing was properly held. That the court had to *find* a serious risk of flight in order to detain Mr. Lozano under subsection (e) is not clear from the language of the statute, but what is abundantly clear is that the history and policy considerations underlying the bail analysis for centuries have revolved around the Government's substantial interest in securing appearance of the accused to answer for the charges.

*Lozano*, 2009 WL 3834081, at *5 (emphasis in original) (citing *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951)). *But see United States v. Chavez–Rivas*, 536 F.Supp.2d 962, 966–67 (E.D.Wis.2008) (pointing out that subsection (e) states detention may be ordered only after a hearing pursuant to the provisions of subsection (f) and that if subsection (f) limits the cases in which such hearings may be held, "it follows that the court may not order detention unless one of the circumstances in § 3142(f) exists.").

Regardless of the reason that a defendant may fail to appear, whether by his own volition or by way of a removal order, I am primarily concerned with whether there are any conditions or combination of conditions that can reasonably assure the defendants' appearance as required. Because it is undisputed that each defendant is subject to an administrative removal order, the, answer, I believe, is clearly "no." "[W]hen an alien is ordered removed, the Attorney General *shall* remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A) (emphasis added). "Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible ... or deportable...." *Id.* § 1231(a)(2). "Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal." *Id.* § 1231(a)(4)(A). Moreover, the District Court has no authority to review removal decisions involving aliens. *Lozano*, 2009 WL 3834081, at *4 n. 4 (finding no statutory or other authority that would allow a court to direct the Attorney General to stay or interrupt defendant's removal proceedings) (quoting 8 U.S.C. § 1252(g), "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.").

Under these circumstances, if I release the defendants there are no conditions available to reasonably assure their appearance for trial. Defendants have suggested no such conditions. If I release them, they will return to ICE custody and it will simply be a race against the clock that will decide whether they are removed to Mexico or prosecuted for these charges. While the statute provides 90 days for removal, Green's undisputed testimony establishes a much shorter timeframe: three to four weeks.

Trial is set in each of these cases for February 4, 2013. Based on the record before me, it is extremely unlikely that the defendants would still be in the United States on that date if I release them. Nor do I have the power to impose any condition or combination of conditions to reasonably assure their appearance if released. As such, I find that all three defendants must be detained prior to trial.

Based on the foregoing:

1. Defendants are committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Attorney General shall afford defendants reasonable opportunity for private consultation with counsel while detained.

3. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver defendants to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. If a "review" motion for revocation or amendment is filed, pursuant to 18 U.S.C. § 3145(a) or (b), the party requesting a change in the original order *must:*

    (a) Attach a copy of the release/detention order to the appeal;

    (b) Promptly secure a transcript.

5. There is *no automatic stay* of this Order. Therefore, defendants must request such relief from the court.

**IT IS SO ORDERED.**