**UNITED STATES of America,**
**Plaintiff,**

v.

**Juan LIZARDI–MALDONADO,**
**Defendant.**

**Case No. 1:17–CR–35–RJS**

United States District Court,
D. Utah, Central Division.

Signed 06/28/2017

Rachel Marie McDonald, U.S. Attorney's Office, Salt Lake City, UT, for Plaintiff.

## MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S MOTION FOR REVIEW OF DETENTION AND RELEASE ON CONDITIONS

EVELYN J. FURSE, United States Magistrate Judge

The Court GRANTS Defendant Juan Lizardi–Maldonado's Motion to Review Detention. Upon reopening the detention hearing, the Court finds the Government has not shown by a preponderance of the evidence that the Court cannot reasonably assure the appearance of Mr. Lizardi–Maldonado back at court by imposing a combination of conditions. Therefore, the Court ORDERS Mr. Lizardi–Maldonado released on the conditions set forth below.

## I. MATERIAL CHANGE WARRANTING REOPENING OF DETENTION HEARING

On June 19, 2017, Defendant Juan Lizardi–Maldonado filed a Motion for Review of Detention based on his decision not to participate in the Fast Track program.[1] (ECF No. 10.) In this District, the United States Attorney's Office requires a defendant to consent to pretrial detention if he wishes to participate in the Fast Track program. At the initial appearance, the United States moved for a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(A), claiming Mr. Lizardi–Maldonado poses a serious risk of flight. In so moving, the United States proffered that it lodged an Immigration Detainer against Mr. Lizardi–Maldonado based on a final order of removal, that Mr. Lizardi–Maldonado had previously been deported four times, that Mr. Lizardi–Maldonado had a recent conviction for driving under the influence, and that Mr. Lizardi–Maldonado had no legal status in the United States and therefore lacks legitimate ties to the community.

Mr. Lizardi–Maldonado's counsel did not challenge either the proffer or detention and indicated he reserved his right to contest detention if Mr. Lizardi–Maldonado opted-out of the Fast Track program.

This Court granted the Motion for a Detention Hearing and detained Mr. Lizardi–Maldonado based on the weight of the evidence against the defendant, the fact that he is subject to removal or deportation after serving any period of incarceration, and that he has previously been deported four times, showing a willingness to navigate the border. (ECF No. 4.) Through its proffer, and the lack of opposition, the United States proved by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Mr. Lizardi–Maldonado's appearance as required.

■ To reopen the issue of detention, the movant must demonstrate that information exists, not known to the movant at the detention hearing, "that has a material bearing on the issue" of release. 18 U.S.C. § 3142(f). In its opposition, the United States asserts that no longer participating in the Fast Track program does not constitute a change in circumstance. (United States' Resp. to Def.'s Mot. for Review of Det. 2, ECF No. 12.) Because the United States conditions participation in the Fast Track program on consent to detention, participation in the Fast Track program has a material bearing on the issue of detention. At the time of the detention hearing, Mr. Lizardi–Maldonado intended to participate in the program, and that fact

---

1. The Fast Track program allows for a downward departure in a defendant's sentencing guideline range if he agrees to early disposition of his case. The program streamlines the handling of illegal re-entry offenses. The eligibility requirements for these programs vary from district to district, and the Tenth Circuit characterizes them as "nebulous". United States v. Lopez–Macias, 661 F.3d 485, 487 (10th Cir. 2011).

has now changed. Therefore, Mr. Lizardi–Maldonado's decision not to participate in the Fast Track program constitutes a material change warranting a reopening of his detention hearing.

Also of note, Pretrial Services does not interview Fast Track participants or prepare a Pretrial Services Report prior to an initial appearance on a Fast Track case. Without that report, defense counsel and the Court lack any information about the defendant beyond that provided by the United States. Further, Fast Track initial appearances usually involve multiple defendants all represented by the same attorney who has approximately ten minutes prior to the hearing to meet with his clients to determine their willingness to participate in the Fast Track program.

## II. BASIS TO HOLD A DETENTION HEARING

Mr. Lizardi–Maldonado argues that the United States cannot show Mr. Lizardi–Maldonado "poses a serious risk that [he] will flee," 18 U.S.C. § 3142(f)(2)(A). Mr. Lizardi–Maldonado does not contest the information the United States previously proffered to obtain a detention hearing. Rather, Mr. Lizardi–Maldonado contends that additional facts surrounding Mr. Lizardi–Maldonado make clear he does not pose a risk of flight. Thus, he contends, the Court cannot even hold a detention hearing to determine whether it should detain him.

■ The Court agrees that if it finds the threshold conditions under § 3142(f) have not been met, it cannot hold a detention hearing and thus cannot detain the defendant. The Third Circuit in *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) quoted from legislative history of § 3142, stating that the § 3142(f) "cir-

cumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial," permitting detention only "upon proof of a likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes actually specified by the bail statute."

In United States v. Ploof, 851 F.2d 7, 10–11 (1st Cir. 1988), the First Circuit held

[T]he structure of the statute and its legislative history make it clear that Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists. To conclude otherwise would be to ignore the statement in the legislative history that the "circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial," *see* S.Rep. No. 225, 98th Cong., 2d Sess. 20, *reprinted in* 1984 U.S.Code Code & Admin.News 3182, 3203; *see also* United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) ("The Bail Reform Act[2] carefully limits the circumstances under which [preventive] detention may be sought to the most serious of crimes"), and to authorize detention in a broad range of circumstances that we do not believe Congress envisioned.

See also United States v. Chavez–Rivas, 536 F.Supp.2d 962, 965–67 (E.D. Wis. 2008) ("Unless the case falls within one of the above categories in § 3142(f), the court may not detain the defendant."); see accord United States v. Rogers, 371 F.3d 1225, 1232 (finding certain charges fall within crimes of violence under

---

**2.** The "Bail Reform Act" refers to the Bail Reform Act of 1984 and includes 18 U.S.C. §§ 3141–3156.

§ 3142(f)(1) and overturning district court's decision finding no entitlement to a detention hearing).

Neither side provides any guidance about the quantum of evidence needed to show a serious risk of flight sufficient to warrant the holding of a detention hearing.

Some of the information from the United States' proffer has changed. The United States now contends Mr. Lizardi–Maldonado had four prior removals from the United States rather than four prior deportations. The 1996 amendments to the immigration laws changed the term "deportation" to "removal". Padilla v. Kentucky, 559 U.S. 356, 364 n. 6, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). Further, Mr. Lizardi–Maldonado's prior conviction for driving under the influence of alcohol occurred in 2002, not recently. Recently, in May 2017, Mr. Lizardi–Maldonado received another charge of driving under the influence of alcohol, but that case remains pending.

 This Court finds Mr. Lizardi–Maldonado cannot now contest the United States' right to a detention hearing after previously submitting to the hearing and not contesting the basis for the hearing.

## III. RISK OF NON–APPEARANCE BACK AT COURT FOR FURTHER PROCEEDINGS

The United States asserts that it has shown that Mr. Lizardi–Maldonado poses a risk of non-appearance back at court for further proceedings that the Court cannot manage under any condition or combination of conditions. The United States does not contend that Mr. Lizardi–Maldonado poses a risk of danger to the community. Mr. Lizardi–Maldonado contends he does not wish to leave the district and has a place to stay here with his family.

 The Eighth Amendment prohibits the imposition of excessive bail. U.S. Const. amend. VIII. 18 U.S.C. § 3142 im-

plements this guarantee and governs a defendant's release or detention pending trial. This statute requires the Court order the Defendant released on his own recognizance or on an unsecured bond pretrial, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the Court determines either personal recognizance or an unsecured bond will not reasonably assure either end, the Court must impose the least restrictive further condition that will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(c)(1)(B). 18 U.S.C. § 3142(f) requires the court to hold a detention hearing on the government's motion when the alleged crime meets certain criteria, § 3142(f)(1), or on its own or the government's motion when the case involves "a serious risk that [the defendant] will flee," § 3142(f)(2)(A), or "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, . . . ." If those conditions are met, the Court will hold a detention hearing. The Court shall order detention of the defendant pending trial if it finds "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "The government must prove risk of flight by a preponderance of the evidence." United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003). Importantly, nothing in the statute modifies or limits the presumption of the Defendant's innocence prior to trial. 18 U.S.C. § 3142(j). "'The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.'" Taylor v. Kentucky,

436 U.S. 478, 483, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978) (quoting Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895)).

In making its determination at the detention hearing, the Court considers the following factors: the nature and circumstances of the charged offense, the weight of the evidence against the Defendant, the history and characteristics of the Defendant—including his character, physical and mental condition, family ties, employment, financial resources, length of residence in community, community ties, past conduct, history of substance abuse, crime, and court appearances, whether the defendant was on probation, parole, or release pending trial, sentencing, appeal, or completion of a sentence—and the nature and seriousness of danger posed by the person's release. See 18 U.S.C. § 3142(g).

## A. Nature and Circumstances of the Charged Offense

■ The United States charges Mr. Lizardi–Maldonado with illegal reentry of a previously removed alien. The Bail Reform Act requires the Court to consider "the nature and circumstances of the offense, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). The charge in this case is none of these things and does not carry a presumption of detention. The nature of the charge includes some risk of flight because the person necessarily has ties to a foreign country and lacks a legal right to be in the United States. Thus, fleeing to another country to avoid prosecution remains a possibility.

However, not all people lacking legal documentation to remain in the United States pose a risk of flight sufficient to require detention. See United States v. Albanez–Carballo, No. 2:15–cr–136–DN, ECF Nos. 12 & 15 (D. Utah Mar. 20, 2015) (unpublished) (release of defendant where both parties agreed he would only leave the jurisdiction if deported). Indeed, the Ninth Circuit sitting en banc struck down an Arizona constitutional provision that prohibited its courts from releasing undocumented immigrant criminal defendants prior to trial because they posed a flight risk. Lopez–Valenzuela v. Arpaio, 770 F.3d 772 (9th Cir. 2014). The court found the provision facially unconstitutional because it did not provide for individualized assessment of a defendant's risk and had provided "no evidence that undocumented status correlates closely with unmanageable risk." Id. at 786–87. Other courts have noted that had Congress wanted to exclude removable aliens from consideration for release in criminal proceedings it could have do so but has not. United States v. Adomako, 150 F.Supp.2d 1302, 1304 (M.D. Fla. 2001); United States v. Montoya–Vasquez, No. 4:08cr3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009) (unpublished). Indeed, Congress did not even include a presumption of detention in the Bail Reform Act for cases involving removable aliens or any subcategory thereof.

The circumstances of the charged offense are that Mr. Lizardi–Maldonado was removed from the United States in 2014. At the time Mr. Lizardi–Maldonado had two minor children who are United States citizens ages eleven and twelve. Their mother, Mr. Lizardi–Maldonado's wife of thirteen years, died of cancer the year before. Counsel for Mr. Lizardi–Maldonado proffered that Mr. Lizardi–Maldonado reentered the country to take care of his children. Mr. Lizardi–Maldonado is a citizen of Mexico who was first removed from the United States in 1998.

Mr. Lizardi–Maldonado faces a maximum of two years imprisonment and a

likely guideline range, proffered by his counsel and not contested by the United States, of zero to sixth months in prison.

The Court finds the nature and circumstances of the charged offense weigh in favor of release. Mr. Lizardi–Maldonado continues to have the same strong familial ties to the United States that brought him back here in 2014—namely two minor daughters with United States citizenship. Unlike some other undocumented defendants, moving to another location and changing his name does not meet the need for which he continues to return—his need to take care of his daughters. Mr. Lizardi–Maldonado has repeatedly demonstrated an intention to remain living with and caring for his minor daughters. Thus, this factor weighs in favor of release.

The United States proffers an ICE Detainer in support of detention, contending if the Court releases Mr. Lizardi–Maldonado, ICE will take him into custody, continue removal proceedings, and likely deport him prior to trial because no basis exists to stay the deportation. Thus, the United States contends, the only way reasonably to assure the appearance of Mr. Lizardi–Maldonado back at court is to detain him in the custody of the U.S. Marshals. Defense counsel argues that the ICE detainer reflects a mere request, and a court order overcomes it.

An unpublished opinion from the Tenth Circuit held "a defendant's immigration status and the existence of an ICE detainer are relevant to the detention decision as part of the history and characteristics of the defendant." United States v. Salas–Urenas, 430 Fed.Appx. 721, 722 (10th Cir. 2011) (unpublished). The Immigration Detainer in this case, on DHS Form 1–247A (3/17), states that a final order of removal for Mr. Lizardi–Maldonado exists and that the Department of Homeland Security (DHS)[3] has verified Mr. Lizardi–Maldonado's identity. (ECF No. 12–1.) The Detainer further requests the United States Marshals Service notify ICE before release of Mr. Lizardi–Maldonado from its custody and requests the Marshals maintain custody for no more than forty-eight hours from when he would otherwise have been released to allow it to take custody. (Id.) Nothing in the Immigration Detainer suggests the Marshals must do as requested.

The United States further argues 8 C.F.R. § 287.7(d) requires the Marshals to detain Mr. Lizardi–Maldonado for forty-eight hours after his release from custody to allow ICE to take custody of him. One court of appeals case interprets this regulation and finds the United States' reading of the regulation incorrect. Galarza v. Szalczyk, 745 F.3d 634, 640–42 (3d Cir. 2014). Specifically, the Third Circuit found the words "shall maintain custody" in the regulation indicate the forty-eight hour limitation on maintain custody when read in the context of the regulation as a whole and not a requirement to further detain the defendant. Id. at 640. In that case, the immigration detainer included mandatory detention language not present in this case. Id. at 642. The language of the Detainer in this case makes the Third Circuit's conclusion even more accurate given it is written exclusively in terms of a request.

Moreover, the Immigration Detainer itself says: "This detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other mat-

---

3. Through the Homeland Security Act of 2002, ICE came into being, INS ceased to exist, and DHS took over the duties formerly assigned by immigration statutes and regula-

tions to the Department of Justice. See United States v. Resendiz–Guevara, 145 F.Supp.3d 1128, 1133 n. 4 (M.D. Fla. 2015).

ters." (Id.) Given this statement, the Court can hardly rely on the Immigration Detainer as the basis to detain Mr. Lizardi–Maldonado.[4]

## B. Weight of the Evidence Against the Defendant

■ The Bail Reform Act also requires the Court to consider the weight of the evidence against Mr. Lizardi–Maldonado on the charges at issue. See 18 U.S.C. § 3142(g)(2); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003). The United States argues the evidence against Mr. Lizardi–Maldonado weighs heavily in favor of detention. Certainly, the evidence against Mr. Lizardi–Maldonado on the charge of illegal reentry of a previously removed alien is strong. The United States attached Mr. Lizardi–Maldonado's alien file, which includes his record of removals and does not include any document suggesting the Secretary of Homeland Security gave him permission to reenter the country. (ECF No. 12–1.)

■ However, the release or detention decision is not like a preliminary injunction in the civil context, where the court prejudges the merits of the case. Indeed, the Bail Reform Act reaffirms the guarantee of the presumption of innocence pretrial. 18 U.S.C. § 3142(j).

> This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (citing Hudson v. Parker, 156 U.S. 277, 285, 15 S.Ct. 450, 39 L.Ed. 424 (1895)). Thus to avoid falling down the rabbit-hole into the world of "[s]entence first—verdict afterwards,"[5] the Court considers the strength of the evidence in terms of that evidence's bearing on the risk of nonappearance and the risk of harm to the community. The likelihood of conviction by itself has no bearing on the pretrial release decision.

■ This reading of the statute comports with Tenth Circuit law that allows the judge making the pretrial release decision to consider suppressed evidence in making its determination. See United States v. Cos, 198 Fed.Appx. 727, 730–31 (10th Cir. 2006) (unpublished). If the weight of the evidence prong required the court to prejudge the merits of the case, the court would have to avoid consideration of excluded evidence. Moreover, courts consider all of the other factors in § 3142 for their impact on the two issues relevant to release or detention—nonappearance and risk of harm. To consider the weight of the evidence for purposes of prejudging the outcome would convert pretrial detention from a regulatory detention into a punitive detention. See United States v. Salerno, 481 U.S. 739, 747–48, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (finding detention based on dangerousness regulatory rather than punitive because it attempts to protect society from harm rather than punish the accused for being dangerous).

In this case, as the evidence is strong that Mr. Lizardi–Maldonado lacks legal documentation to be in the country, has

---

4. The United States' assertion that the Court should consider the Immigration Detainer despite the plain language of the Detainer troubles the Court, particularly in light of the fact

that the Special Assistant United States Attorney comes to the Court from ICE.

5. Lewis Carroll, Alice in Wonderland (spoken by the Queen of Hearts).

previously been removed, and is a citizen of Mexico. Given Mr. Lizardi–Maldonado's likely lack of legal status in the United States, he cannot work while on pretrial release. In addition, he has ties to Mexico based on his citizenship there and does not contest his ability to return to Mexico. At the termination of this proceeding, ICE will remove Mr. Lizardi–Maldonado. This factor weighs in favor of detention.

## C. History and Characteristics of the Defendant

 In considering the history and characteristics of Mr. Lizardi–Maldonado, the Court considers

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law;

18 U.S.C. § 3142(g)(3).

Born in Guanauato, Mexico in 1972, Mr. Lizardi–Maldonado first moved to this country initially at age sixteen. His parents still reside in Mexico, and he maintains weekly contact with them. He does not have a passport and speaks primarily Spanish.

Mr. Lizardi–Maldonado and his wife had three children together who are currently ages fourteen, fifteen, and twenty-three. Mr. Lizardi–Maldonado's wife passed away in June 2013 from stomach cancer. Mr. Lizardi–Maldonado reports good health and lives with his children in Ogden, Utah. The proposed release address belongs to Mr. Lizardi–Maldonado's twenty-three year old son, his wife, and their infant daughter. One of Mr. Lizardi–Maldonado's brothers also lives at this address, and his other brother lives in the Ogden area as well. By all accounts, Mr. Lizardi–Maldonado is a beloved father and integral member of his extended family.

Mr. Lizardi–Maldonado has worked in the past for two separate employers for a number of years. Both employers wrote letters in favor of Mr. Lizardi–Maldonado attesting to his hard work and good nature. One of the employers agrees that Mr. Lizardi–Maldonado could return to work for it, and Mr. Lizardi–Maldonado would like to do so if he allowed.

Mr. Lizardi–Maldonado first encountered immigration enforcement in 1998 when he attempted illegal entry into the United States from Mexico using a fraudulent green card. (ECF No. 12–1 at 8–9.) In 2000, immigration officials found Mr. Lizardi–Maldonado in Kane County, Utah and began removal proceedings for which he failed to appear. ICE completed that removal process in 2007. On two separate occasions in February and April of 2014, ICE reinstated its prior order of removal and removed Mr. Lizardi–Maldonado from the United States.

Mr. Lizardi–Maldonado has one prior misdemeanor conviction for driving under the influence of alcohol in 2002. He paid a fine and completed one year of probation with no apparent difficulties. Recently, on May 19, 2017, Mr. Lizardi–Maldonado came to ICE's attention after being charged in state court with the additional misdemeanors of driving under the influence and reckless driving and the infraction of not having a driver's license. On May 20, 2017, ICE issued a Warrant of Removal/Deportation, (ECF No. 17), removed Mr. Lizardi–Maldonado from the Weber County Jail, and took him into ICE custody. (ECF No. 12–1 at 4, 6.) The cur-

rent state case reflects a failure to appear on May 24, 2017. Given ICE had Mr. Lizardi–Maldonado in its custody at that time, the Court does not consider this failure to appear as a reflection of Mr. Lizardi–Maldonado's willingness to appear back at court for future proceedings.

Absent Mr. Lizardi–Maldonado's status as a removable alien, the United States would, almost certainly, not have sought detention. However, Mr. Lizardi–Maldonado's immigration situation does create a risk that he will return to Mexico rather than face the charges in this case. In assessing this risk, his history of returning to Utah to live with his children suggests Mr. Lizardi–Maldonado does not want to return to Mexico and does want to be with his children. Mr. Lizardi–Maldonado has been the primary caretaker for his two minor daughters since 2013 when they lost their mother and his wife to cancer. The Court finds the likelihood very small that Mr. Lizardi–Maldonado would voluntarily leave his children to live somewhere else without them under these circumstances.

Furthermore, Mr. Lizardi–Maldonado has demonstrated a willingness to appear in court previously on misdemeanor criminal charges. He has no history of violence. Additionally, Mr. Lizardi–Maldonado's counsel indicated, if released, Mr. Lizardi–Maldonado would use the time prior to trial to prepare and plan for the care of his teenage daughters after his removal. Mr. Lizardi–Maldonado will not be able to work while on release but does have extended family members who can and are willing to support him financially during this period. This factor weighs in favor of release.

The Court notes the United States v. Zavala–Resendiz, No. 1:17cr21DAK, ECF No. 32, decision from another judge in this district concludes that a defendant subject to deportation and having strong family ties in the United States might flee or not appear back at court, and no combination of conditions could "cure" the risk. The short opinion does not elaborate on the details of the case, but this Court does not find the opinion in conflict with this opinion. The court appears to have made an individualized determination considering all of the statutory factors and detained the defendant.

## D. Nature and Seriousness of Danger Posed by Release

The United States does not contend that Mr. Lizardi–Maldonado poses a danger if release and submits nothing on this prong. (ECF No. 12.) Therefore, this factor weighs in favor of Mr. Lizardi–Maldonado's release.

## IV. EVALUATION OF THE ABILITY OF CONDITIONS REASONABLY TO ASSURE APPEARANCE AT COURT

 "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Salerno, 481 U.S. at 755, 107 S.Ct. 2095. The Court must release the defendant on his own recognizance or on an unsecured bond pretrial, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). No one contends Mr. Lizardi–Maldonado will endanger the safety of any other person or the community. Mr. Lizardi–Maldonado claims he poses no risk of nonappearance, and thus the Court can release him on his own recognizance.

The Court disagrees. Mr. Lizardi–Maldonado does pose a risk of nonappearance back at court. Mr. Lizardi–Maldonado lacks legal status in the United States, has family in Mexico, speaks Spanish, and will be removed to Mexico at the conclusion of

this case regardless of whether he wins or loses. Under these circumstances, a risk exists that Mr. Lizardi–Maldonado will not return to court to see these charges through in an attempt to evade both removal and any potential criminal consequences. A personal recognizance or an unsecured bond will not reasonably assure Mr. Lizardi–Maldonado's appearance back at court.

Therefore, the Court must impose "the least restrictive further condition or conditions" that will reasonably assure the appearance of the defendant. 18 U.S.C. § 3142(c)(1)(B) (emphasis added); see also United States v. Deppish, 554 Fed.Appx. 753, 754–55 (10th Cir. 2014) (unpublished) (discussing and applying least restrictive condition standard in the context of a risk of danger).

To guard against the risk that Mr. Lizardi–Maldonado will choose to abscond, the least restrictive means necessary reasonably to assure his reappearance include the following conditions:

1. Placing Mr. Lizardi–Maldonado in the third-party custody of his daughter-in-law who will need to agree to supervise Mr. Lizardi–Maldonado in accordance with the conditions of release, use every effort to assure his appearance back at court, and notify the court if he violates any conditions of release or disappears.

2. Ordering Mr. Lizardi–Maldonado to live with his daughter-in-law and not change his address without prior permission of the pretrial officer, not travel outside of Utah without prior permission of the pretrial officer, and not travel outside of the United States without the Court's permission.

3. Requiring reporting to the pretrial officer as directed by that officer.

4. Prohibiting Mr. Lizardi–Maldonado from obtaining or applying for a passport.

The United States claims these conditions will not reasonably assure Mr. Lizardi–Maldonado's appearance back at court because ICE will take him into custody upon release and deport him. Thus, the risk the United States asserts these conditions cannot control is the risk that one part of the Executive Branch may remove Mr. Lizardi–Maldonado from the jurisdiction before another part of the Executive Branch has time to try him for a pending crime.

Mr. Lizardi–Maldonado's counsel argues, any removal of Mr. Lizardi–Maldonado prior to trial would constitute an interference with a criminal prosecution and would be illegal. If the Court has concerns about his appearance back at court, Mr. Lizardi–Maldonado contends conditions exist that would reasonably assure his appearance back at court.

 Turning to the United States' argument that 8 U.S.C. § 1231(a)(1)(B) requires ICE to deport Mr. Lizardi within ninety days of his release from Marshals' custody. That code section specifies that the removal period runs from the latest of three events, including, "If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(iii). The United States argues the statute means if the Court releases Mr. Lizardi–Maldonado the removal period begins to run but not if the Court detains him. The statute never defines what it means by "confine" or "confinement". The United States' reading gives no meaning to the word "confinement" because it asserts nothing short of pretrial detention will toll the removal period.

■ The rules of statutory construction require courts to give each word in the statute its own meaning. TRW Inc. v. Andrews 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (noting " 'a cardinal principle of statutory construction' that 'no clause, sentence, or word shall be superfluous, void, or insignificant' ") (quoting Duncan v. Walker, 533 U.S 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)). Because the rules of statutory construction require attributing meaning to each word, the word "confine" and "confinement" must necessarily mean something other than detention.

Other courts have held that the word "confinement" encompasses pretrial release on conditions. "[A] person who has been released subject to conditions of pretrial supervision is still 'confined' because they are subject to restraints not shared by the public generally that significantly confine and restrain their freedom." United States v. Trujillo–Alvarez, 900 F.Supp.2d 1167, 1174–75 (D. Or. 2012); United States v. Resendiz–Guevara, 145 F.Supp.3d 1128, 1135 (M.D. Fla. 2015); United States v. Blas, No. CRIM. 13–0178–WS–C, 2013 WL 5317228, at *5 (S.D. Ala. Sept. 20, 2013) (unpublished).

The Supreme Court has long recognized that many restrictions can infringe on a person's liberty beyond just detention, including the liberty inherent in the right to travel, to work, and to choose where to live. Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900). "Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty." Gerstein v. Pugh, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The Tenth Circuit has expressly held the court's "power to set a number of highly restrictive conditions on [pretrial] release" can result in a determination that the defendant is in custody. United States v. Sack, 379 F.3d 1177, 1180 (10th Cir.

2004) (finding defendant was in custody for purposes of the escape statute when ordered to live at a halfway house while on pretrial release).

Two pretrial release conditions that would certainly qualify as confinement include home incarceration and home detention. With home incarceration the defendant must stay at his home twenty-four hours a day except for medical necessities and court appearances or other court-approved activities. With home detention a defendant must stay at his home at all times except for employment, education, religious services, medical, substance-abuse or mental-health treatment, attorney visits court appearances, court-ordered obligations, or other pretrial officer-approved activities.

Furthermore, other courts have found an electronic monitoring condition, United States v. Vujnovich, No. 07-20126-01-CM-DJW, 2008 WL 687203, *2 (D. Kan. March 11, 2008) (unpublished), or a curfew, U.S. v. Torres, 566 F.Supp.2d 591, 597 (W.D. Tex. 2008), constitutes a significant restraint on liberty.

Thus additional proposed conditions of pretrial release including requiring Mr. Lizardi–Maldonado not work, not drive, and submit to voice recognition location monitoring to verify his presence at the specified home once a day, would almost certainly qualify as confinement. As such, Mr. Lizardi–Maldonado's confinement pretrial would prevent the removal period from beginning under 8 U.S.C. § 1231(a)(1)(B)(iii). Thus, ICE would not have to detain and deport Mr. Lizardi–Maldonado prior to his trial in this case under 8 U.S.C. § 1231.

By contrast, if the Court released Mr. Lizardi–Maldonado on his own recognizance, those conditions would likely not constitute confinement for purposes of 8 U.S.C. § 1231(a)(1)(B)(iii). See accord,

Becker v. Kroll, 494 F.3d 904, 916 (10th Cir. 2007) (finding no seizure for 4th Amendment purposes where criminal defendant never posted a bond, had to appear in court, or suffer "restrictions on her freedom of movement").

█ The United States argues that 8 U.S.C. § 1231(a)(4)(A) prevents this reading of 8 U.S.C. § 1231(a)(1)(B)(iii). 8 U.S.C. § 1231(a)(4)(A) states "[p]arole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal." Certainly, statutory construction also requires the Court to read the provisions of a statute in harmony with each other. Oakley v. City of Longmont, 890 F.2d 1128, 1132–33 (10th Cir. 1989); § 46:5 "Whole statute" interpretation, 2A Southerland Statutory Construction § 46:5 (7th ed.) (stating "each part or section should be construed in connection with every other part or section to produce a harmonious whole"). Nothing in 8 U.S.C. § 1231(a)(4)(A) specifically refers to pretrial release or release on bond. While one could read 8 U.S.C. § 1231(a)(4)(A) to require removal in all cases except those where the person is currently in prison, that reading would render the word "confinement" in 8 U.S.C. § 1231(a)(1)(B)(iii) superfluous. To read the two provisions of 8 U.S.C. § 1231(a) in harmony, the words "possibility of arrest or further imprisonment" can be read to refer to situations where the person remains a suspect in a crime, thus not charged, or has not yet been arraigned on charge, or has been released on his own recognizance. This reading gives a harmonious meaning to all parts of the statue.

In support of its reading of the statute, the United States cites United States v. Ramirez–Hernandez, 910 F.Supp.2d 1155, 1160 (N.D. Iowa 2012). The Ramirez–Hernandez court found that the existence of an ICE removal order precludes release prior to trial on conditions. Id. In particu-lar, the Court found that 8 U.S.C. § 1231(a)(4)(A) prohibits ICE from deferring removal based on "the possibility of arrest or further imprisonment" created by pretrial release. Id. Certainly, one can read 8 U.S.C. § 1231 in combination with 18 U.S.C. § 3142 to reach that result. However, that reading violates the due process requirement for individualized consideration in every pretrial detention hearing. Salerno upheld the constitutionality of the Bail Reform Act because it limited the circumstances in which detention would occur and provided procedural safeguards to ensure courts made individualized decisions about detention in every case. Salerno, 481 U.S. at 750–52, 107 S.Ct. 2095. The Ramirez–Hernandez court's interpretation creates an irrebuttable presumption and a large category of defendants who cannot obtain bail under any conditions. Congress has not even created such a high bar in capital offenses. Doing so would surely run afoul of "the carefully limited exception" approved by Salerno, 481 U.S. at 755, 107 S.Ct. 2095. Where one statutory construction would result in the statute being unconstitutional, and another acceptable interpretation exists, courts "construe the statute to avoid such problems." I.N.S. v. St. Cyr, 533 U.S. 289, 299–300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). For this reason, the Court does not read the immigration statutes in combination with the Bail Reform Act the way the court in Ramirez–Hernandez did.

Moreover, this Court's reading of the immigration statute harmonizes with the Bail Reform Act. In a provision not applicable here, the Bail Reform Act gives ICE up to ten days to determine whether to take custody of defendant before the court makes its release or detention decision. 18 U.S.C. § 3142(d). After that, the Bail Reform Act states that "[i]f the official fails or declines to take the person into custody during that period, the person shall be

treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." Id. By reading the removal period as not beginning until after the person is released from detention or pretrial release with conditions, 18 U.S.C. § 3142(d) makes sense because the court does not have to worry that ICE will cause the defendant to fail to appear back at court for further proceedings should it impose conditions. Thus the Court truly can treat the person without regard to "deportation or exclusion proceedings."

■ This reading also flows well with the provision of 18 U.S.C. § 3142(d) that eliminates the federal court's need to hold the defendant for the period if it finds the person may not "flee or pose a danger to any other person or the community." When a court finds a defendant will likely appear back at court for future proceedings and will not pose a danger to any other person or the community, the court must release that person on his own recognizance. 18 U.S.C. § 3142(b). When a court releases a defendant on his own recognizance, he is not detained or confined under this interpretation of 8 U.S.C. § 1231(a)(1)(B)(iii), and the removal period can begin. Thus, no need for delay to allow ICE to determine whether to proceed with deportation instead of waiting for the criminal trial exists because the court's actions in the case will not foreclose ICE from making that determination at a later date but prior to the criminal trial. "[W]here two statutes are ' "capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." ' " Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 133–134, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), quoting Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)).

To the extent a defendant subject to deportation poses a risk of nonappearance, that risk falls fully within the control of the Executive Branch. ICE regulations provide that "departure" from the United States of any alien within certain categories shall be deemed prejudicial to the interests of the United States. 8 C.F.R. § 215.2(a) provides "No alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3." 8 C.F.R. § 215.3 sets forth the types of people whose departure from the United States would be prejudicial to the interests of the United States. Subsection g specifically calls out "[a]ny alien who is needed in the United States as a witness in, or as a party to; any criminal case under investigation or pending in a court in the United States: Provided, That any alien who is a witness in, or a party to, any criminal case pending in any criminal court proceeding may be permitted to depart from the United States with the consent of the appropriate prosecuting authority, unless such alien is otherwise prohibited from departing under the provisions of this part." Thus, the United States Attorney's Office has control over whether a criminal defendant will be deported. United States v. Rodriguez, No. 13-CR-20126-01-CM, 2013 WL 6904074, at *2 (D. Kan. Dec. 31, 2013) (unpublished).

The United States asserts that these regulations do not apply to cases of removal, claiming the word "departure" only refers to a person voluntarily leaving the country. The United States points to no statute, regulation, policy, or other source in support of this argument. 8 C.F.R. § 215.1 does define "depart" and places no limits on the definition based on voluntariness. 8 C.F.R. § 215.1(h) states:

(h) The term depart from the United States means depart by land, water, or air: (1) From the United States for any foreign place, or (2) from one geographical part of the United States for a separate geographical part of the United States: Provided, That a trip or journey upon a public ferry, passenger vessel sailing coastwise on a fixed schedule, excursion vessel, or aircraft, having both termini in the continental United States or in any one of the other geographical parts of the United States and not touching any territory or waters under the jurisdiction or control of a foreign power, shall not be deemed a departure from the United States.

Given that the burden in a detention hearing falls on the United States, it has not met its burden on to show why the regulations at 8 C.F.R. § 215.1–215.3 do not apply to removals. See accord Resendiz-Guevara, 145 F.Supp.3d at 1136 ("In light of Section 215.3(g) and that initially there was cooperation between ICE and the U.S. Attorney's office here, the Court believes that the Government must show why it lacked the ability to prevent Defendant's departure through a stay or departure control, which it failed to do in the instant case.").

However, the more important point is that being subject to deportation does not make a defendant a risk of nonappearance without more. Section 3146 of the Bail Reform Act, which punishes failures to appear, provides an affirmative defense to prosecution of a failure to appear where

uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and the person appeared or surrendered as soon as such circumstances ceased to exist."

18 U.S.C. § 3146(c). As noted by other courts, "[t]here is no reason to believe that 'failure to appear' as used in section 3142 means something different from 'failure to appear' as used in section 3146." Montoya–Vasquez, 2009 WL 103596, at *4–5 (citing case law); United States v. Stepanyan, No. 3:15–cr–00234–CRB, 2015 WL 4498572, at *3 (N.D. Cal. July 23, 2015) (unpublished) (refusing to "attach an odd, non-volitional meaning to 'risk of flight' that does not comport with any source of which this Court is aware"). Hence, what ICE does upon release of Mr. Lizardi–Maldonado does not make him a risk of failing to appear.

Under these circumstances, the Court finds the United States has failed to show by a preponderance of the evidence that no combination of conditions will reasonably assure the appearance of Mr. Lizardi–Maldonado back at court. The Court finds that the following conditions will reasonably assure Mr. Lizardi–Maldonado's appearance back at court:

1. Placing Mr. Lizardi–Maldonado in the third-party custody of his daughter-in-law who will need to agree to supervise Mr. Lizardi–Maldonado in accordance with the conditions of release, use every effort to assure his appearance back at court, and notify the court if he violates any conditions of release or disappears.

2. Ordering Mr. Lizardi–Maldonado to live with his daughter-in-law and not change his address without prior permission of the pretrial officer, not travel outside of Utah without prior permission of the pretrial officer, and not travel outside of the United States without the Court's permission.

3. Requiring reporting to the pretrial officer as directed by that officer.

4. Prohibiting Mr. Lizardi–Maldonado from obtaining or applying for a passport.

5. Prohibiting employment absent authorization from ICE.

6. Prohibiting driving absent a valid driver's license.

7. Requiring voice recognition location monitoring to verify his presence at the specified home once a day.

8. Requiring compliance with all conditions put in place related to the pending state court charges.

## V. LEGALITY OF THE CURRENT PROSECUTION

Mr. Lizardi–Maldonado's attorney asserts ICE has acted illegally by pursuing this prosecution in violation of the statutes that govern it. Specifically, Mr. Lizardi–Maldonado asserts that on May 20, 2017, when ICE issued a Warrant of Removal/Deportation, (exhibit 1 to detention hearing), the removal period restarted for purposes of 8 U.S.C. § 1231. See 8 U.S.C. § 1231(a)(1)(B)(i), (a)(5). As a result, Mr. Lizardi–Maldonado argues, ICE must detain him in its custody during that period and must remove him from the country with ninety days of that date. See 8 U.S.C. § 1231(a)(1)(A), (a)(2). Further, according to Mr. Lizardi–Maldonado, ICE may not defer removal for the possibility of arrest or further imprisonment. See 8 U.S.C. § 1231(a)(4). Thus, on May 26, 2017, when ICE turned Mr. Lizardi–Maldonado over to the Marshals for criminal prosecution in this case, (ECF No. 12–1 at 1), it acted without authority to do so under its own statute. Moreover, Mr. Lizardi–Maldonado's attorney claims this act is criminal and in collusion with the United States Attorney's Office as the prosecuting attorney in the criminal case is a Special Assistant United States Attorney from ICE.

The United States maintains it has authority to proceed down the dual tracks of criminal prosecution and immigration enforcement at the same time, just as it can proceed against an individual for the same conduct both criminally and civilly at the same time.

Counsel for Mr. Lizardi–Maldonado provides no case law to support his argument and appears to argue for dismissal without expressly asking for such. The closest case the Court can find is United States v. Resendiz–Guevara, 145 F.Supp.3d 1128 (M.D. Fla. 2015). In that case, the court dismissed the criminal prosecution without prejudice when ICE deported a criminal defendant prior to trial. Id. Rather Mr. Lizardi–Maldonado's attorney argues that because of the United States' unclean hands, the Court should release his client on his own recognizance. The Court does not know of any authority for considering the United States' prosecutorial conduct as a factor in determining a defendant's suitability for pretrial release. Therefore, the Court will not consider whether the United States acted appropriately in its handling of this case.

## CONCLUSION

The United States has failed to show by a preponderance of the evidence that a combination of conditions will not reasonably assure Mr. Lizardi–Maldonado's appearance back at court for further proceedings. Because some risk of flight exists, the Court imposes conditions on Mr. Lizardi–Maldonado's release. The Court will not tell the Executive Branch how to prioritize its dual goals of immigration enforcement and criminal prosecution. The Court will, however, adhere to its obligations under the Bail Reform Act and expects the parties who appear in front of it to comply with court orders.